# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Rayco DelShaune Traylor, | Case No. 15-cv-2816 (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Hennepin County Adult Detention Center, Laura (nurse), Sgt. Rumpza, | |
| Defendants. | |

---

Rayco DelShaune Traylor, 5329 Osgood Avenue North, Stillwater, MN 55082 (*pro se* Plaintiff); and

James W. Keeler, Jr. and Beth A. Stack, Assistant Hennepin County Attorneys, Hennepin County Attorney's Office, 300 South 6th Street, Suite C-2000, Minneapolis, MN 55487 (for Defendant).

---

This matter comes before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss, (ECF No. 18).[1] This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Joan N. Ericksen, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion be **GRANTED** and this matter be **DISMISSED**.

---

[1] The Court also has before it Plaintiff's Motion for Discovery, (ECF No. 32), and Motion to Appoint Counsel, (ECF No. 34). These motions are discussed in Section IV, *infra*.

## I.    BACKGROUND

On June 26, 2015, Plaintiff Rayco DelShaune Traylor filed suit under 42 U.S.C. § 1983. (ECF No. 1). Specifically, Plaintiff asserts he was injured when he "slipped and fell in the county jail shower." (Compl., at § IV(A), ECF No. 1). Plaintiff did not identify the constitutional basis for his claim, but alleges that the Defendants delayed medical care. (Compl., at § IV). Plaintiff identifies as defendants the Hennepin County Adult Detention Center and two employees identified only as "Nurse Laura" and "Sgt. Rumpza." (Compl., at § III(B)). Plaintiff seeks compensation for the alleged constitutional violation. (Compl., at § V).

On September 30, 2015, Defendants moved to dismiss Plaintiff's case pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff failed to state a claim upon which relief could be granted. (Mot. to Dismiss, ECF No. 18). Defendants argue that Plaintiff's Complaint does not include factual allegations that would plausibly suggest any unconstitutional policy, practice, or custom of Hennepin County, and Plaintiff has failed to plead any claim against the individually named Defendants. (*See* Def. Mem. of Law, ECF No. 15).

On October 1, 2015, the Court issued a Case Management Order setting a briefing schedule for Plaintiff's response to Defendants' motion to dismiss, requiring Plaintiff to file any response on or before November 6, 2015 and Defendants to file any reply on or before November 20, 2015. (ECF No. 20). Plaintiff did not file any document styled as a response to Defendant's motion to dismiss, but instead  submitted a document entitled "First Amended Complaint" on October 19, 2015. (First Am. Compl., ECF No. 25).

Plaintiff's "First Amended Complaint" echoes the allegations found in the original Complaint. In response, Defendants filed a reply memorandum on November 20, 2015, arguing that Plaintiff's theories and allegations remained unchanged and are still insufficient to state any plausible claim for relief. (Def. Reply Mem. of Law, ECF No. 27).

## II.   PLAINTIFF'S PLEADINGS

As a threshold matter, the Court must determine what documents it may consider in deciding this motion to dismiss. Courts "generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim or for judgment on the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). A court, "may, however, consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Greenman*, 787 F.3d at 887 (citing *Porous Media*, 186 F.3d at 1079). Thus, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media*, 186 F.3d at 1079). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). When evaluating a Rule 12(b)(6) motion, "the court has complete discretion

to determine whether or not to accept any material beyond the pleadings." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (internal quotation marks and citations omitted).

After filing his original Complaint, (ECF No. 1), Plaintiff submitted a First Amended Complaint, (ECF No. 25), and several letters to the Court or Clerk's Office, (ECF Nos. 3, 5, 12, 21–22, 25, 28–29, 31). After reviewing these additional filings, the Court finds that these materials do not contradict the Complaint. The Court next turns to the question of whether these materials are embraced by the pleadings.

The contents of the First Amended Complaint are alleged in the original Complaint and the claims in the two complaints are largely identical. Moreover, the First Amended Complaint provides this Court with some clarification of Plaintiff's original Complaint. As noted, Defendants filed a reply memorandum addressing the First Amended Complaint, thus removing any possibility of surprise to Defendants or hardship resulting from this Court's consideration of the document. Therefore, the First Amended Complaint is embraced by the pleadings and the Court will consider it in determining this motion to dismiss.

Plaintiff has sent many letters to the Court requesting updates as to the status of his case, legal advice, and appointment of an attorney. (*See* ECF Nos. 3, 5, 12, 21–22, 25, 28–29, 31). Of these letters, only two contain information that arguably relates to the underlying claims contained in the complaint. (ECF Nos. 3, 5). As discussed more fully below, small portions of these letters elaborate slightly the underlying claims contained in the complaint. These brief references provide the Court with some clarification as to

Plaintiff's original Complaint. Moreover, these letters were available to Defendants long before they filed their motion to dismiss, so the Court's consideration of these documents provides no surprise or lack of prior opportunity for Defendants to respond. Therefore, the Court finds that Plaintiff's letters from August 12 and 19, 2015 are embraced by the pleadings and will consider them in determining this motion to dismiss.

Plaintiff's remaining letters do not provide any reference to or support of the allegations in the original complaint, even with the benefit of the broad construction afforded *pro se* parties. Rather, they consist of procedural questions to the Court and otherwise general inquiries as to the status of the case. (*See, e.g.*, ECF No. 12 (asking how to calculate days); ECF Nos. 21–22 (requesting update as to status of case, information on how to subpoena various discovery materials, and appointment of counsel and informing the court of a change in address); ECF No. 28 (asking the Court if there are any forms Plaintiff needs to complete); ECF No. 29 (requesting an update on status of case), ECF No. 31 (requesting an update on status of case and assistance in seeking discovery)). These remaining letters do not shed any light on Plaintiff's underlying claims and are not embraced by the pleadings. They will not be considered by the Court in considering this motion.

### A. Complaint

In his original Complaint, Plaintiff claims that he "slipped and fell in the county jail shower," hurting his back and neck, and "was left lying on the floor for nearly an hour due to lack of care and punctuality." (Compl., at § IV(A)). Plaintiff alleges that Defendant "Sgt. Rumpza delayed . . . calling . . . the nurse," telling Plaintiff that he was

not injured and an ambulance would not be called, instead directing Plaintiff to "walk to [his] room" despite Plaintiff alleging he was "clearly in excruciating pain and [unable] to stand to walk . . . while other [correctional officers] laughed and taunted [Plaintiff] and covered witnesses [sic] windows." (Compl., at § IV(B)). Plaintiff further alleges that Defendant "Nurse Laura did not act promptly," leaving Plaintiff "lying . . . on the ground for nearly an hour with [his] genitals exposed . . . ." (Compl., at § IV(B)). Plaintiff alleges that Nurse Laura accused him of being able to move "when it wasn't possible at the time of shock." (Compl., at § IV(B)). Also in the original Complaint, Plaintiff asserts that he "wrote a grievance" relating to this incident, but that he "got shipped to prison weeks after . . . medical staff . . . were supposed to respond so [the grievance] was denied ultimately." (Compl., at § II(C)).

### B.  First Amended Complaint

As in the original Complaint, Plaintiff's First Amended Complaint alleges that he "slipped and hurt [his] back and neck in a shower in the Hennepin County [Adult Detention Center]." (First Am. Compl., at § A(I), ECF No. 25). Plaintiff alleges he "laid on the cold floor in excruciating pain," making him "feel vulnerable and mentally confused on how long it took to receive medical treatment." (First Am. Compl., at § A(I)). Plaintiff "felt helpless especially being in the nude, [his] back went out, and [he] was being taunted and laughed at by staff and inmates alike." (First Am. Compl., at § A(I)). Plaintiff alleges this left him "incapacitated from normal everyday life," that he "barely get[s] any sleep at night because of the pain and often cr[ies] in [his] cell because [he] can't do the thing [he] used to, to the extent and with the strength and energy [he]

6

used to have." (First Am. Compl., at § A(I)). Plaintiff claims he is "suffering from depression, anxiety, and other emotion distress . . . from laying on the floor naked being laughed at and taunted." (First Am. Compl., at § A(I)).

Plaintiff alleges Sgt. Rumpza declined to call an ambulance and told Plaintiff to "get up and go to [his] room." (First Am. Compl., at § A(III)). Plaintiff alleges "Minnesota State Facility Hennepin County Adult Detention Center" and Nurse Laura committed medical neglect by leaving Plaintiff "to suffer where he'd fallen with excruciating back pain unable to move for almost an hour." (First Am. Compl., at § A(II)). Plaintiff asserts that these acts constituted "cruel and unusual punishment" under the Eighth and Fourteenth Amendments. (First Am. Compl., at § A(IV)). As a result, Plaintiff demands two million dollars compensation for his "emotional distress, pain, and suffering, . . . costs of medications, hospital visits [and] rides, [and] cost of living." (First Am. Compl., at § A(IV)). Plaintiff noted that he is suing the named individual defendants "in their own individual capacities." (First Am. Compl., at § A(V)).

### C.  Various Letters to the Court

In a letter dated August 12, 2015, Plaintiff inquired about the status of the case and asked a number of procedural questions. (ECF No. 3). Plaintiff's letter begins by stating "I fell in Hennepin County shower and hurt my neck and back muscles to be exact." (ECF No. 3). And in a letter to the Court on August 19, 2015, Plaintiff again asked procedural questions and requested legal advice, but referred to his case as "the slip & fall incident that took place in Hennepin County Jail." (ECF No. 5).

### III.   MOTION TO DISMISS

#### A.  Legal Standard

Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Furthermore, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B.  The Defendants Sued

Before the Court addresses Plaintiff's substantive claims, it must first address the defendants he has sued. Defendants argue that the Hennepin County Adult Detention Center is not subject to suit, and that the individual Defendants, Nurse Laura and Sgt. Rumpza, are not properly sued either. The Court addresses each argument in turn.

### 1.      Institutional Defendant

"Courts in our District have consistently held that, under Minnesota law, County Departments are not entities which may be sued." *Simon v. Anoka Cnty. Soc. Servs.*, Case No. 12-cv-2754 (SRN/JSM), 2014 WL 6633077, at *7 (D. Minn. Nov. 21, 2014) (quoting *Follis v. Minnesota Atty. Gen.*, Case No. 08-cv-1348 (JRT/RLE), 2010 WL 3399674, at *7 (D. Minn. Feb. 16, 2010), *report and recommendation adopted by*, 2010 WL 3399958 (D. Minn. Aug. 26, 2010)). "Absent authority expressly conferred by statute or ordinance, an agency or department of a municipal corporation does not have the capacity to sue or be sued as a separate entity." *Eaton v. Minnesota Atty. Gen.'s Office*, No. 10-cv-1804 (JRT/FLN), 2010 WL 3724398, at *5 (D. Minn. Aug. 26, 2010). "Although the actions of a county department or commission 'may subject the county itself to liability, a county department or commission itself is not a proper defendant subject to suit in a section 1983 lawsuit.'" *Simon*, 2014 WL 6633077, at *7 (quoting *Shimer v. Shingobee Island Water and Sewer Comm'n*, Case No. 09–cv–953 (JRT/FLN), 2003 WL 1610788, at *3–4 (D. Minn. Mar. 18, 2003)).

Here, Defendant Hennepin County Adult Detention Center and the subsequently dubbed "Minnesota State Facility"[2] are not cognizable legal entities subject to suit. As noted by Defendants, the Hennepin County Adult Detention Center is an operational department of Hennepin County, not a separate legal entity. No statute grants the Hennepin County Adult Detention Center the power to sue or be sued. As such, Hennepin

---

[2] In Plaintiff's First Amended Complaint, he changed the name of the institutional Defendant from "Hennepin County Adult Detention Center" to "Minnesota State Facility." (*Compare* Compl. *with* First Am. Compl.). Within the First Amended Complaint, Plaintiff refers to the institution as "Minnesota State Facility Hennepin County Adult Detention Center." (First Am. Compl., at § A(II)).

County Adult Detention Center and Minnesota State Facility are improper defendants to this action and should be dismissed.

Because Plaintiff is *pro se*, however, the Court will construe Plaintiff's claims against Hennepin County Adult Detention Center and Minnesota State Facility as claims against Hennepin County itself. Hennepin County is an entity subject to suit and is the entity that operates the facility at which Plaintiff alleges he suffered harm. While the Court finds this stretches the outer bounds of the flexibility afforded *pro se* parties, ultimately as discussed below, it does not save Plaintiff's complaint. *See generally Hansford v. Hennepin Cnty. Adult Det. Center*, Case No. 04-cv-4161 (PAM/RLE), 2005 WL 354005, at *1 n. 1 (D. Minn. Feb. 10, 2005) (declining to address arguments that defendants were not proper parties to § 1983 action where claims ultimately failed for want of a constitutional violation).

## 2.    Individual Defendants: Official and Individual Capacities

"Public servants may be sued under section 1983 either in their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). The Eighth Circuit has held that "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson*, 172 F.3d at 535 (citations omitted). "Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her official capacity is merely a suit against the

public employer." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008) ("If no capacity is stated, the claim is deemed to be against the person in an official capacity, which in turn means that the suit is one against the employing municipality.") (citations omitted).

Only when Defendants moved to dismiss on the grounds that Plaintiff failed to sue the individual Defendants in their individual capacities, did Plaintiff provide the following: "It should be noted that I am suing Hennepin County, Nurse Laura, [and] Sgt. Rumpza each in their own individual capacities." (First Am. Compl., at § A(V)). While the Court is reluctant to permit such fundamental changes to Plaintiff's pleadings, *see Kelly v. Ramsey Cnty. Sheriff's Office*, Case No. 08-cv-5028, 2009 WL 511695, at *4 (D. Minn. 2009) (holding that the rule that a plaintiff must clearly state that individual defendants are being sued in their individual capacities "is strictly enforced against a *pro se* plaintiff despite the generally liberal construction of pro se pleadings") (citations omitted), this Court has already concluded that Plaintiff's First Amended Complaint is embraced by the pleadings and will be considered when analyzing this motion. Therefore, the Court construes Plaintiff's claims as against Nurse Laura and Sgt. Rumpza in their official and individual capacities. Just as his claims fail against the institutional Defendant, however, Plaintiff's claims against the individual Defendants also fail regardless of whether sued in their official or individual capacities.

### C. Plaintiff's § 1983 Claim: *Monell*

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The "purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a 'custom or usage' with the force of law.'" *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978)).

"Official policy involves 'a deliberate choice to follow a course of action made from among various alternatives' by an official who is determined by state law to have the final authority to establish governmental policy." *Ware*, 150 F.3d at 880 (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990)).

> Alternatively, 'custom or usage' is demonstrated by:
> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware*, 150 F.3d at 880 (quoting *Jane Doe A*, 901 F.2d at 646).

Turning to the nature of the claims in this case, Plaintiff "may prevail on his official-capacity claims by identifying a policy that constitutes either deliberate indifference to medical needs or a punishment." *Turner v. Mull*, 784 F.3d 485, 489 (8th Cir. 2015) (quoting *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997)). "To establish a claim of deliberate indifference to serious medical needs under § 1983, [Plaintiff] must demonstrate that he suffered from an objectively serious medical need and that the officials actually knew of but deliberately disregarded the need." *Turner*, 784 F.3d at 490 (quoting *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013)).

Plaintiff has not stated any facts to suggest the existence of an unconstitutional policy or custom by Hennepin County that would have resulted in officials being deliberately indifferent to Plaintiff's allegedly serious medical needs. In fact, Plaintiff appears to be alleging that his case was unique: that Nurse Laura and Sgt. Rumpza did not believe Plaintiff when he claimed he was injured due to an accident in the shower. There is no assertion that Hennepin County officials leave inmates or detainees lying on the shower floor on a customary basis, let alone that Hennepin County deliberately chose to delay medical treatment of any kind for inmates or detainees. Plaintiff's "failure to even allege, let alone provide evidence of, a policy or custom of [Hennepin] County which caused his alleged injuries is fatal to his claim." *Nelson v. Stuart*, Case No. 11-cv-3143 (DSD/TNL), 2014 WL 4749180, at *19 (D. Minn. Sept. 24, 2014) (citing *Moyle v.*

*Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) ("To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity.")); *Johnson*, 172 F.3d at 536 (summary judgment proper where plaintiffs failed to allege facts or produce evidence showing injury was result of county policy or custom); *Uland*, 570 F. Supp. 2d at 1119 (plaintiff's failure to allege injury was result of city custom/practice or official policy fatal to § 1983 claim). Therefore, to the extent Plaintiff's complaint can be interpreted as a *Monell* claim against Hennepin County and an official capacity claim against the individual Defendants, it fails to state a claim.

### D.  Plaintiff's § 1983 Claim: Eighth Amendment

As noted above, to "state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). At the time of the shower incident, Plaintiff appears to have been a pretrial detainee, not an inmate.[3] Regardless of whether Plaintiff was a pretrial detainee or convicted inmate, courts "apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).[4]

---

[3] Plaintiff does not state whether he was a pretrial detainee or a convicted inmate. Plaintiff does note, however, that he was "shipped to prison" after the shower incident, thereby suggesting he was a pretrial detainee at the time. (Compl., at § II(C)). Defendant indicates Plaintiff was a pretrial detainee at the time of the shower incident. (*See* Def. Mem. of Law, at 8). Thus, the Court treats Plaintiff as a pretrial detainee for the purposes of this motion.

[4] "As a pretrial detainee, [Plaintiff's] right to medical care arises under the Due Process Clause of the Fourteenth Amendment." *Jackson*, 756 F.3d at 1065 (citation omitted).

"The Eighth Amendment obligates state prison officials to provide inmates with medical care." *Laughlin v. Schriro*, 430 F .3d 927, 928 (8th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481 (8th Cir. 2008) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." (quoting *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)).

A pretrial detainee alleging unconstitutional denial of medical care "must establish both that the deprivation of which he complains was sufficiently serious as an objective matter to deny him 'the minimal civilized measure of life's necessities,' and that the prison officials acted with a sufficiently culpable state of mind." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010) (quoting *Wilson v. Seiter*, 510 U.S. 294, 298, 303 (1991)). A plaintiff claiming such violations must establish both objective and subjective components. *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013) (citation omitted). Plaintiff "must show that he suffered from a medical need that was objectively 'serious.'" *Christian*, 623 F.3d at 613 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "This in turn requires evidence that the medical condition was diagnosed by a physician as requiring treatment, or was so obvious that a layperson would recognize the need for a physician's attention." *Christian*, 623 F.3d at 613 (citing *Jones*, 512 F.3d at 481). "Under the subjective prong, [Plaintiff] must show that the defendants were aware of the need but deliberately disregarded it." *Christian*, 623 F.3d at 613 (citing *Jones*, 512 F.3d at 481). To demonstrate that Defendants "actually knew of, but deliberately disregarded, a serious

medical need, [Plaintiff] must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quotation omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson*, 730 F.3d at 747 (quotations and citations omitted).

For the objective prong, Plaintiff's alleged medical condition—an injured back and neck—was not diagnosed by a physician, so Plaintiff must show that this injury was so obvious that a layperson would recognize the need for a physician's attention. The Court cannot conclude that from Plaintiff's filings. Plaintiff's pleadings contain no support, whether medical record, factual recitation, or something else, that he suffered a serious injury, other than his "bare assertion" that his fall resulted in such serious pain that he could not get up and needed immediate medical attention. *See Twombly*, 550 U.S. at 556. Plaintiff provides no allegation of any physical manifestations of bodily harm, such as broken or protruding bones, contusions, bleeding, deformations, swelling, or the like, that would make his alleged back and neck pain so obvious that a layperson would recognize the need for immediate medical attention. Instead, the pleadings suggest both Sgt. Rumpza and Nurse Laura observed that Plaintiff did not have a serious injury that required immediate attention and told Plaintiff he was well enough to walk back to his cell from the shower. Thus, the Court cannot conclude that Plaintiff has met the objective prong, and Plaintiff's claim should be dismissed. *See Beane v. Hennepin Cnty. Jail*, Case No. 15-cv-205 (DWF/BRT), 2015 WL 4545374, at *3 (D. Minn. July 27, 2015)

(dismissing prisoner's complaint because "his unadorned references to a cut on his lower area" were insufficient to allege an objectively serious medical need).

To complete the analysis, however, the Court turns to the subjective prong. Here, Plaintiff cannot show that Defendants were aware of his serious medical need and deliberately disregarded it. As noted above, it was not readily apparent to either Sgt. Rumpza or Nurse Laura that Plaintiff had a serious injury that required immediate attention, even if they laughed in the process. Plaintiff does not allege that he had any outward manifestations of an injury that would provide Defendants with notice of a serious medical need. Nonetheless, Plaintiff received medical attention about one hour after his injury became known to Defendants. Plaintiff's assertion that the ambulance should have been called sooner does not raise the delay to a constitutional violation. Again, other than Plaintiff's unadorned statements, there is no physician's diagnosis, no opinion of any medically-trained person, no medical records, and no other factual recitation to support that Plaintiff had a serious medical condition requiring immediate medical attention. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009); *see, e.g.*, *Johnson v. Hamilton*, 452 F.3d 967, 973 (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) (concluding that prison doctors were not deliberately indifferent, even though they did not act as quickly as hindsight perhaps suggested that they should have); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Mere negligence or medical malpractice . . . are insufficient to rise

18

to a constitutional violation."). Thus, the Court cannot conclude that Plaintiff has met the subjective prong. *See Beane*, 2015 WL 4545374 at *3 (dismissing plaintiff's complaint where the officer summoned a nurse who examined the alleged injury).

In sum, this Court cannot conclude Plaintiff has alleged Defendants "so deviated from professional standards that it amounted to deliberate indifference." *Id*. Therefore, Plaintiff's purported claims under the Eighth Amendment against the individual Defendants in their individual capacities must be dismissed for failure to state a claim.

## IV.    PLAINTIFF'S REMAINING MOTIONS

Finally, Plaintiff has filed several motions related to discovery. Rather than addressing those motions in a separate order, this Court finds it prudent to address them herein so as to provide resolution on all outstanding matters. Plaintiff seeks discovery to prepare his case for trial, (ECF No. 32; *see* ECF No. 34), and requests appointment of counsel to assist him in collecting this discovery, including interviewing and locating witnesses and developing facts to prove his case, (ECF No. 34). This Court has previously denied Plaintiff's requests for counsel. (ECF No. 24). Because this Court recommends granting Defendants' motion to dismiss Plaintiff's suit, it also recommends Plaintiff's remaining motions be **DENIED AS MOOT** given that, if Plaintiff's suit is dismissed, no discovery will occur, obviating any need for discovery or counsel to assist with discovery matters.

## V.   RECOMMENDATION

Based upon the foregoing and all of the files, record, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss, (ECF No. 18), be **GRANTED**.

2. Plaintiff's Complaint, (ECF No. 1), and First Amended Complaint, (ECF No. 25), be **DISMISSED**.

3. Plaintiff's Motion for Discovery, (ECF No. 32), and Motion to Appoint Counsel, (ECF No. 34), be **DISMISSED AS MOOT**.


Dated: May 27, 2016                    _____*s/ Tony N. Leung*_____
                                       Tony N. Leung
                                       United States Magistrate Judge
                                       District of Minnesota

                                       *Traylor v. Hennepin County Adult*
                                       *Detention Center et al.*
                                       Case No. 15-cv-2816 (JNE/TNL)


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).


**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.